No. 24-1317

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LIONEL CANNON,
*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT NO. 5:19-CV-2337-FLA-SPX*

## GOVERNMENT'S ANSWERING BRIEF

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

RYAN WATERS
Assistant United States Attorney
Asset Forfeiture and Recovery
Section

1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-3111
Email: ryan.waters@usdoj.gov

Attorneys for Defendant-Appellee
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**DESCRIPTION**                                                        **PAGE**

I.    INTRODUCTION ........................................................................... 1

II.   ISSUES PRESENTED ................................................................... 3

III.  STATEMENT OF THE CASE ......................................................... 4

    A.    Jurisdiction and Timeliness ................................................... 4

    B.    Statement of Facts and Procedural History ........................... 4

        1.    Bowman's Theft of Currency ........................................... 4

        2.    Cannon Criminal Case ..................................................... 5

        3.    Bowman Criminal Case .................................................... 8

        4.    Motion to Reverse Forfeiture Judgment ......................... 9

        5.    November 12, 2020 Ruling ............................................ 10

        6.    Cannon's Subsequent Filings and Interrogatory Responses ..................................................................... 11

        7.    February 12, 2024 Ruling .............................................. 15

IV.  SUMMARY OF ARGUMENT ........................................................ 16

V.    ARGUMENT ................................................................................ 18

    A.    Cannon's Claim is Barred by the Sovereign Immunity of the United States ............................................................... 18

        1.    Standard of review ......................................................... 18

        2.    Legal standard ............................................................... 19

        3.    Ordonez controls this case ............................................. 22

# TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                                     **PAGE**

a. The government has sovereign immunity under Ordonez ...................................................22

b. Minor does not apply ..........................................26

c. Cannon's arguments regarding forfeiture simply are irrelevant to the jurisdiction issue................................................................27

B. The District Court Properly Granted the Government's Motion for Summary Judgment ............................................29

    1. Standard of review.......................................................29

    2. Legal standards ..........................................................30

        a. Rule 41(g) motion for recovery of property.........30

        b. Summary judgment.............................................31

    3. Analysis ...................................................................33

        a. Cannon has no property right in the stolen currency as it was the proceeds of his drug trafficking...........................................................33

        b. Cannon did not genuinely dispute the source of the cash stolen by Bowman .................36

VI. CONCLUSION ...........................................................39

.

# TABLE OF AUTHORITIES

**DESCRIPTION**                                                **PAGE(S)**

## Federal Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................31, 32

*Bailey v. United States*,
508 F.3d 736 (5th Cir. 2007)................................................................23

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................32

*Clinton v. City of New York*,
524 U.S. 417 (1998)................................................................19

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021)................................................................29

*Diaz v. United States*,
517 F.3d 608 (2d Cir. 2008) ................................................................23, 24

*Garcia v. Salvation Army*,
918 F.3d 997 (9th Cir. 2019)................................................................19

*Hajro v. U.S. Citizenship and Immigration Services*,
811 F.3d 1086 (9th Cir. 2016)................................................................18, 25

*Hernandez v. Spacelabs Med., Inc.*,
343 F.3d 1107 (9th Cir. 2003)................................................................32

*Honeycutt v. United States*,
137 S. Ct. 1626 (2017)................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)................................................................32

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
682 F.3d 1144 (9th Cir. 2012)................................................................31

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION** **PAGE(S)**

*Ordonez v. United States,*
   680 F.3d 1135 (9th Cir. 2012)................................................... passim

*Ramsden v. United States,*
   2 F.3d 322 (9th Cir. 1993)......................................................29, 30

*Suzuki Motor Corp. v. Consumers Union, Inc.,*
   330 F.3d 1110 (9th Cir. 2003)...........................................................29

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
   809 F.2d 626 (9th Cir. 1987).......................................................32, 33

*United States ex rel. Haight v. Catholic Healthcare W.,*
   602 F.3d 949 (9th Cir.2010)..............................................................25

*United States v. 37.29 Pounds of Semi- Precious Stones,*
   7 F.3d 480 (6th Cir. 1993)................................................................33

*United States v. $100,120,*
   730 F.3d 711 (7th Cir. 2013).............................................................37

*United States v. Clymore,*
   245 F.3d 1195 (10th Cir. 2001).........................................................35

*United States v. Dean,*
   100 F.3d 19 (5th Cir. 1996)....................................................34, 35, 36

*United States v. Droganes,*
   728 F.3d 580 (6th Cir. 2013)............................................................23

*United States v. Eames,*
   524 Fed. Appx. 320 (9th Cir. 2013) ..................................................22

*United States v. Harrell,*
   530 F.3d 1051 (9th Cir. 2008)......................................................29, 33

*United States v. Hayes,*
   385 F.3d 1226 (9th Cir. 2004)..........................................................21

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                                      **PAGE(S)**

*United States v. Howell,*
    425 F.3d 971 (11th Cir. 2005) ........................................................... 30

*United States v. Jones,*
    225 F.3d 468 (4th Cir. 2000) ............................................................. 27

*United States v. Kaczynski,*
    416 F.3d 971 (9th Cir. 2005) ............................................................. 29

*United States v. Kaczynski,*
    551 F.3d 1120 (9th Cir. 2009) ...................................................... 33, 34

*United States v. Marolf,*
    173 F.3d 1213 (9th Cir. 1999) ........................................ 10, 22, 27, 28

*United States v. Martinson,*
    809 F.2d 1364 (9th Cir. 1987) ....................................... 20, 22, 28, 30

*United States v. Minor,*
    228 F.3d 352 (4th Cir. 2000) ...................................................... 26, 27

*United States v. Mitchell,*
    445 U.S. 535 (1980) .......................................................................... 20

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ............................................................. 31

*United States v. Van Cauwenberghe,*
    934 F.2d 1048 (9th Cir. 1991) .......................................................... 31

*United States v. Wright,*
    49 F.4th 1221 (9th Cir. 2022) ................................................... passim

**Federal Statutes**

18 U.S.C. § 654 ...................................................................................... 8

18 U.S.C. § 1512(b)(3) ........................................................................... 8

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                            **PAGE(S)**

18 U.S.C. § 1512(c)(2) ....................................................................... 8

18 U.S.C. § 1519 ............................................................................... 8

21 U.S.C. § 846 .................................................................................. 6

21 U.S.C. § 853 ............................................................................. 6, 11

21 U.S.C. § 881(a)(6) ........................................................................ 35

28 U.S.C. § 1291 ................................................................................ 4

28 U.S.C. § 1346 ................................................................................ 4

**Federal Rules**

Fed. R. App. P. 4(a)(1)(B) .................................................................. 4

Fed. R. Civ. P. 12(h)(3) ..................................................................... 19

Fed. R. Civ. P. 56(a) .......................................................................... 31

Fed. R. Civ. P. 56(c) .......................................................................... 29

Fed. R. Crim. P. 41(g) ................................................................. passim

No. [24-1317]

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LIONEL CANNON,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. 5:19-CV-2337-FLA-SPX*

## GOVERNMENT'S ANSWERING BRIEF

## I

## INTRODUCTION

Plaintiff-Appellant Lionel Cannon is a convicted drug dealer and career offender. He filed a "Motion to Reverse Forfeiture Judgment" seeking the return of some of his drug proceeds because this money was not specifically listed as subject to forfeiture in one of his plea agreements or the resulting forfeiture order. This money was not explicitly included in the plea agreement or forfeiture order because a

corrupt FBI Special Agent (since fired and prosecuted) named Scott Bowman stole some of Cannon's drug proceeds that were seized in San Bernardino in 2014. Bowman did not place this stolen money into evidence so originally the government believed that the amount of the seized drug proceeds was only $366,800.

The district court treated defendant's motion as a motion for return of property under Federal Rule of Criminal Procedure 41(g), which in the circumstances of this case is a civil complaint seeking equitable relief. In opposition to the Rule 41(g) motion, the government filed a motion for summary judgment on two grounds. First, there was no genuine issue of material fact to refute that the money stolen by Bowman was, like the money Cannon agreed to forfeit, proceeds from Cannon's drug trafficking rather than money legitimately earned by Cannon or his family members. Second, the government's sovereign immunity eliminated jurisdiction for Cannon's motion under Rule 41 because he was seeking the "return" of money that the government did not possess; namely, the money stolen by Bowman.

The Court should affirm the district court's order. First, this Court and all the other courts of appeal that have addressed this issue have

2

ruled that a motion under Rule 41(g) in these circumstances is defeated by the government's sovereign immunity. Courts have upheld this bedrock jurisdictional rule even in cases in which the plaintiff was not a long-time drug dealer and had unfairly suffered loss because of the government's conduct. Second, the district court properly determined that there was no direct evidence or reasonable inference that the stolen funds came from a legitimate source and were not subject to forfeiture. Accordingly, the district court did not err in granting the government's summary judgment motion.

## II

## ISSUES PRESENTED

A.     Whether sovereign immunity required the district court to deny Cannon's Rule 41(g) motion for return of property for lack of jurisdiction.

B.     Whether the district court properly granted summary judgment and denied Cannon's Rule 41(g) motion for return of property based on its analysis whether any genuine issues of material fact existed that the stolen currency was not the proceeds of drug trafficking.

3

**III**

**STATEMENT OF THE CASE**

**A.    Jurisdiction and Timeliness**

The district court's jurisdiction rested on 28 U.S.C. § 1346.  This

Court's jurisdiction rests on 28 U.S.C. § 1291. The district court entered

judgment on February 12, 2024. (1-ER-2-11.)[1] Defendant filed a timely

notice of appeal on March 4, 2024. (3-ER-490.) *See* Fed. R. App. P.

4(a)(1)(B).

**B.    Statement of Facts and Procedural History**

*1.    Bowman's theft of currency*

On August 19, 2014, then Federal Bureau of Investigation ("FBI")

Special Agent Bowman conducted a search of Cannon's mother's and

sister's San Bernadino Residence. (1-ER-13.) Bowman had a lawful

warrant for the search. (1-ER-13.) During the search, Bowman seized

United States currency from a safe located in a bedroom closet. (1-ER-

13.) There was no official count of the currency at the search location.

---

[1]  "ER" refers to defendant's Excerpts of Record and is followed by
the applicable page numbers. "AOB" refers to Appellant's Opening Brief
and is followed by applicable page numbers.

4

(1-ER-13.) Bowman took custody of the currency and transported it to the FBI office in Riverside, California for overnight storage. (1-ER-13.)

The following day, Bowman retrieved an evidence bag full of the currency from the FBI office. (*Id.*) However, before delivering the currency to a facility that performs cash counting services for law enforcement, Bowman stole some amount of currency from the evidence bag. (*Id.*)[2] Bowman left $366,800 in the evidence bag to be counted by the currency-counting company and completed a report on the seizure that stated the amount of currency seized was $366,800. (*Id.*)

### 2.    *Cannon criminal case*

On September 16, 2014, a federal grand jury in the Western District of Pennsylvania indicted Cannon and others for narcotics trafficking offenses. (2-ER-43-45.) The indictment contained a forfeiture allegation stating that the property to be forfeited "includes but is not limited to" a list of specific items; one of these times was the "evidence seized on August 19, 2014 in San Bernardino, California: $366,800 in

---

[2] Cannon claims the amount of the stolen cash was $218,200; the district court did not believe this amount was reasonably disputed and accepted it as accurate. (1-ER-7.)

5

U.S. currency." (2-ER-44-45.) On November 13, 2014, a grand jury in the Northern District of Ohio indicted Cannon for additional narcotics trafficking offenses.[3] (2-ER-46-50.)

A second superseding indictment filed February 17, 2015, charged Cannon with two counts of trafficking cocaine and heroin in violation of 21 U.S.C. § 846. (2-ER-51-56.) The indictment included a forfeiture allegation pursuant to which Cannon, in a plea agreement, later agreed to forfeit "property seized on August 19, 2014 from 4895 Lakewood Drive, San Bernardino, California: $366,800 in U.S. currency." (2-ER-54-55.)

Cannon entered into a plea agreement pursuant to which he agreed to plead guilty in both cases and to forfeit "all property subject to forfeiture under 21 U.S.C. §§ 853(a)(1), 853(a)(2), and 853(p), including but not limited to" the $366,800 in currency and other property. (2-ER-57-62.) Cannon acknowledged that the currency "constitutes proceeds of the offense of drug trafficking and/or was property used or intended to be used to facilitate the commission of that offense." (2-ER-58.) Further,

---

[3] The Ohio case later was transferred to the Western District of Pennsylvania.

Cannon acknowledged that the currency was the subject of a forfeiture allegation, and he consented to the entry of an order of forfeiture. (2-ER-58.)

On May 1, 2017, the Honorable Mark Nornak, United States District Judge, sentenced Cannon to a term of imprisonment of 156 months. (2-ER-264.) On March 8, 2018, the district court entered an order granting the motion of the United States to forfeit Cannon's property, including the $366,800 in U.S. currency. (2-ER-271-72.) At the sentencing hearing, the prosecutor explained that Bowman was not part of the investigation and did nothing more than execute the search warrant in California, but that "he did significantly impact this case" by stealing some of the seized currency. The prosecutor stated:

> Although every single agent and officer in this case worked on this investigation with the utmost integrity and professionalism, the Government is aware that the egregious conduct of former Agent Bowman could have in the mind of the jurors played some part in this case, and that was a factor that the Government weighed heavily in reaching this agreement.

> So although this sentence is far below the career offender guideline for a Defendant who is truly a career offender, who has continued to commit serious criminal offenses for most of his life, the certainty of this conviction and of this sentence outweighs any need for the Government to try to get a more lengthy sentence in this case.

(2-ER-256-257.)

In addition, the district court declined to impose a fine, stating at the sentencing hearing that, "there is no basis in the record, particularly given the forfeiture allegations regarding currency, to conclude that you can pay a fine." (2-ER-264.)

### 3. *Bowman criminal case*

After a federal grand jury in the Central District of California indicted Bowman in 2015, Bowman entered a guilty plea on September 20, 2016, where he pleaded guilty to obstruction of justice in violation of 18 U.S.C. § 1512(c)(2); conversion of property by a federal employee in violation of 18 U.S.C. § 654; destruction, alteration or falsification of records in violation of 18 U.S.C. § 1519; and witness tampering in violation of 18 U.S.C. § 1512(b)(3). (2-ER-276-77.)

As part of the Bowman investigation, the Office of the Inspector General interviewed Cannon. Cannon stated that he had purchased the safe at a Walmart upon his arrival in San Bernardino, California, on or about May 23, 2014. He also stated that he placed $200,000 in cash in the safe at that time, and an additional $400,000 in cash in the safe on a second trip in July 2014. (2-ER-85-87.) According to Count 1 of the

8

second superseding indictment, to which Cannon pled guilty, Cannon was engaged in trafficking cocaine during this time period. (2-ER-51-56.) (trafficking cocaine from in and around December 2013 to in and around August 2014); (2-ER-57-62) (plea agreement).

### 4. *Motion to reverse rorfeiture judgment*

On March 6, 2019, Cannon filed a "Motion to Reverse Forfeiture Judgment" in the Western District of Pennsylvania before that court transferred the matter to the Central District of California. (3-ER-443-78.)

In the Motion, Cannon requested that the court "order the return of stolen currency by fired (former) FBI Agent Scott Bowman and other damages" in the amount of $25 million. (3-ER-443.) The motion sought return of the stolen money under Rule 41(g) of the Federal Rules of Criminal Procedure. (3-ER-443.) Cannon further argued that the district court in his criminal case improperly imposed joint and several liability for forfeiture on him in violation of *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). (3-ER-445-46.) Cannon noted that the district court did not order the forfeiture of funds stolen by Bowman. (3-ER-446-47.) He claimed that "reverse forfeiture is in order," and that he was not

9

allowed to retain counsel of his choice. (3-ER-447-52.) He also made a claim under the RICO statutes based on the violation of his Fourth Amendment rights. (3-ER-452-54.) Finally, Cannon made a claim for "unjust enrichment" under California state law. (3-ER-456-58.)

### 5. *November 12, 2020 Ruling*

In an order dated November 12, 2020, the Honorable Jesus Bernal, United States District Judge, ruled that all of Cannon's claims other than the Rule 41(g) claim were outside the scope of the present motion and would likely be unsuccessful if raised in another pleading. (1-ER-12-16.) With respect to Cannon's unjust enrichment claim, the district court agreed with the United States that that claim was time-barred because tort claims require a written claim to the appropriate agency within two years of the accrual of the claim under 28 U.S.C. § 2401. (1-ER-14.)

As to the Rule 41(g) claim, the district court stated that Cannon's situation was analogous to a situation where the government has failed to give notice of forfeiture proceedings. (1-ER-15.) Citing *United States v. Marolf*, 173 F.3d 1213 (9th Cir. 1999), the court stated that where the United States has given no notice and the time for commencing

forfeiture proceedings has expired, the claimant is entitled to recover

the seized property or, if the property has been sold, a sum equal to the

value of the property wrongfully forfeited. (1-ER-15.) But Judge Bernal

also stated:

> However, Mr. Cannon is not entitled to property that is "contraband or subject to forfeiture." If the cash seized but not properly forfeited represents gains from Mr. Cannon's unlawful activity, then it, too, is subject to forfeiture. See 21 U.S.C. § 853. If that is the case, Mr. Cannon's successes may be purely academic. But the Court will not (indeed, cannot) assume that this is so without evidence on the issue.

(1-ER-15.)

Judge Bernal then directed Cannon to do the following:

> - Present more precise evidence on the amount of money seized by the United States but not forfeited as part of Mr. Cannon's plea; and
> - Brief the Court on the issue of whether the money at issue [referring to the currency stolen by Bowman] is contraband or subject to forfeiture.

(1-ER-16.)

### 6. Cannon's subsequent filings and interrogatory responses

In response to the November 12, 2020 order, Cannon filed a series

of documents with the district court. In a March 29, 2021 filing, Cannon

stated that the amount of currency stolen by Bowman was "very close"

to $219,000 and "at least" $219,000. (3-ER-344-45.) Cannon also

11

asserted that the currency cannot be considered contraband because "US Currency is not considered to be contraband itself" and that the currency is not subject to forfeiture because the limitations period for filing a civil forfeiture action against the stolen money has expired. (3-ER-345.)

Cannon also indicated that some of the stolen money belonged to other family members. He stated that "[t]he safe which the money was store [sic] was a family depository where all members use of [sic] the residence including but not limit[ed] to my mother." (3-ER-345.)

However, in his subsequent responses to interrogatories, Cannon appears to have contradicted the claim that some of the money stolen by Bowman belonged to family members. (2-ER-71-3.) Instead, in response to Interrogatory No. 7, asking him to "State exactly how much of the stolen currency that you are claiming an ownership interest to," Cannon stated that he "claims an ownership interest in the currency stolen by former FBI Agent Scott Bowman, and believes that amount to be approximately $233,200.00." (2-ER-71.)

In addition, in response to Interrogatory 8, asking him to explain the "source(s) or origin(s) of the stolen currency that you are claiming

12

an ownership to," Cannon describes income received during the roughly six-year period of 2008 through 2014 in the form of sales of his vehicles from 2008 to 2012 totaling $42,500; gifts from various people in 2012 totaling $8,000; an unstated amount of wages from prison work at USP Allenwood and FCI Forrest City between January 1, 2010 and approximately July 2012; and an unstated amount of wages for work as a personal trainer in Ohio at either $16 or $30-32 per hour from August 2012 to August 2014. (2-ER-71-73.) Cannon was unable to identify any documents that support this response. (2-ER-73.)

In response to Interrogatory No. 5, asking him to state all salaries and income received from 2010 to 2014, Cannon only noted the money he earned at USP Allenwood and FCI Forrest City (no amount stated), and the wages he earned as a personal trainer in Ohio at $16 and $30-32/hour (no amount stated). (2-ER-68-69.)

Cannon refused to answer Interrogatory 15, asking him about his criminal record. (2-ER-76-77.) Nonetheless, the Northern District Ohio indictment recounts three of Cannon's prior convictions for narcotics offenses punishable by a term of imprisonment exceeding one year. (*See* 2-ER-47.) Also, as stated by the government in the Western District of

13

Pennsylvania proceeding, Cannon is a career offender, as that term is used in the United States Sentencing Guidelines. (2-ER-125-26.) He has three federal felony drug convictions.

The first, a conviction for distribution of cocaine, occurred in the United States District Court for the Central District of California in 1990. See *United States v. Lionel Cannon*, CR 89-00872 (C.D. Cal.). (2-ER-125.) In that case, Cannon was sentenced to 120 months' imprisonment and five years' supervised release. His second federal felony drug conviction occurred in the Northern District of Ohio in 2004. In that case, Cannon was sentenced to 130 months' imprisonment and eight years' supervised release. (*Id.*) He was on supervised release in that case at the time he was engaged in the large-scale conspiracy to traffic cocaine in the Western District of Pennsylvania and the Northern District of Ohio that led to his last federal convictions, which resulted in a sentence of 156 months. (*See* 2-ER-57-62, 264.)

According to the Ohio indictment and the government's filing in the Pennsylvania case, Cannon also has a felony drug conviction in state court in California in 1987. (2-ER-47, 125.) And he has three prior convictions in California state court which relate to his possession of

14

firearms – convictions for carrying a concealed firearm in 1984 and 1985 and being a felon in possession of a firearm in 2000. (2-ER-125-26.)

The government opposed defendant's motion for "reverse forfeiture." (2-ER-18-42.) It argued that Cannon's proffered evidence fell far short of showing that the cash stolen by Bowman was not contraband. (2-ER-34.) The government also argued that the district court lacked jurisdiction to order payment under Rule 41(g) because the government's sovereign immunity bars a claim for money damages under Rule 41(g). (2-ER-35-38.)

### 7. *February 12, 2024 Ruling*

On February 12, 2024, the district court issued an order that denied Cannon's motion for recovery of property, or, in the alternative, granted the United States' motion for summary judgment. (1-ER-2-11.) The court ruled that Cannon "has not raised sufficiently a genuine issue of fact by which a jury could conclude the portion of the money taken by SA Bowman had been earned through lawful means and was 'clean' as result, when the remaining $366,800 was tainted." (1-ER-10.) In making this ruling, the district court acknowledged that it could not

15

assess the credibility of Cannon's evidence or fail to draw inferences in favor of Cannon if they these inferences were rational or reasonable. (1-ER-6.)

Nonetheless, the district court found that Cannon's declaration purporting to explain how a portion of the money in the San Bernardino safe was from legitimate sources lacked detailed facts or supporting evidence. (1-ER-9.) Moreover, Cannon's after-the-fact distinction between the money that he forfeited as drug proceeds and the money Bowman stole was not consistent with the admissions Cannon made in his plea agreement. (*Id.*)

The district court did not address the government's argument that Cannon's motion must be denied because the government's sovereign immunity deprived the district court of jurisdiction to award money damages under Rule 41(g).

## IV

## SUMMARY OF ARGUMENT

Cannon's opening brief contains at least fifty requests or statements that the government must "return" to him the money stolen by Bowman or it cannot "retain" this money because it was never

forfeited. But this request is impossible: the government does not have this currency and for all practical purposes never had the currency. The government retains nothing and can return nothing.

For purposes of Cannon's Rule 41(g) motion, this undisputed fact is the beginning and the end of the matter. Whether or not the stolen money was forfeited or could have been forfeited does not change the lack of jurisdiction here. Even if the currency at issue was not subject to forfeiture, Cannon's claim under Rule 41(g) is barred by the sovereign immunity of the United States. Ninth Circuit law holds that sovereign immunity bars a claim for money damages under Rule 41(g); thus, this Court and the district court lack jurisdiction to order a payment. *See Ordonez v. United States*, 680 F.3d 1135 (9th Cir. 2012). Defendant does not cite *Ordonez* in his brief and gives only cursory analysis to this controlling sovereign-immunity argument. Much of the authority he does cite actually follows *Ordonez* or is distinguishable on the law or the facts.

Alternatively, the Court can also affirm the district court's ruling that Cannon did not raise a genuine issue of material fact by which a jury could conclude that the portion of the money stolen by Bowman

17

had been earned through lawful means. Once again, the failure of the government to forfeit the stolen funds is not relevant. The government does not need to return money that is derivative contraband or, more generally, drug proceeds. Even though summary judgment standards strongly favor the non-movant, Cannon provided no rational explanation for why stolen money was lawfully earned while all the other money in the same safe was the proceeds of Cannon's drug dealing. The district court's ruling did not require it to make a credibility determination; rather, it merely refused to accept magical thinking as a basis for denying a summary judgment motion.

V

**ARGUMENT**

A.   **Cannon's Claim is Barred by the Sovereign Immunity of the United States**

  1.   *Standard of review*

This Court reviews a district court's interpretation of Rule 41(g) de novo. *United States v. Ordonez,* 680 F.3d at 1137.

Although the district court did not rule on sovereign immunity, a "jurisdictional issue may be raised for the first time on appeal regardless of its 'constitutional magnitude'." *Hajro v. U.S. Citizenship*

18

*and Immigration Services*, 811 F.3d 1086, 1098 n.6 (9th Cir. 2016) (citing *Clinton v. City of New York*, 524 U.S. 417, 428 (1998)). Moreover, the government did raise sovereign immunity in the district court even though that argument was not the basis for the district court's order. (2-ER-35-38.)

### 2. Legal standard

Where, as here, the government no longer possesses the property which is the subject of a 41(g) motion, Ninth Circuit law holds that sovereign immunity bars a claim for money damages. *Ordonez,* 680 F.3d at 1139. This Court and the district court therefore lack jurisdiction to order payment. *See Garcia v. Salvation Army*, 918 F.3d 997, 1006 (9th Cir. 2019) (citing Fed.R.Civ.P. 12(h)(3) that "If the court determines *at any time* that it lacks subject matter jurisdiction, the court must dismiss the action.") (Emphasis in original.)

In *Ordonez*, the plaintiff filed a Rule 41(g) motion for return of property seized by the FBI after he had been convicted for drug possession. The property had been inadvertently lost or destroyed, and therefore could not be returned to him. 680 F.3d at 1137. Ordonez requested an award of damages for the loss of the property.

19

The Court noted that eight other circuits considering the issue have held that sovereign immunity bars an award of money damages against the government on a Rule 41(g) motion where the property cannot be returned. *Id.* at 1138. Joining those eight other circuits, this Court held that a damages remedy was barred by the sovereign immunity of the United States, which the government had not waived:

> We cannot find an unequivocally expressed waiver of the government's sovereign immunity that extends unambiguously to money damages in the text of Rule 41(g). The Rule by its very terms provides only for the "return [of] the property to the movant," nothing more. Fed. R. Crim. P. 41(g). There is no alternative provision for money damages, and such a provision cannot be implied.

*Id.* at 1139-40 (citing *United States v. Mitchell,* 445 U.S. 535, 538 (1980)).

In reaching this conclusion, this Court in *Ordonez* noted that it was the first Ninth Circuit case to directly address whether sovereign immunity bars an award of money damages under Rule 41. *Id.* at 1139. It acknowledged that *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987) contained language that might be read to allow a request for

20

monetary damages under Rule 41 in certain special circumstances.[4] But *Ordonez* explicitly stated that to the extent *Martinson* has been read as holding that sovereign immunity does not bar a claim for money damages under Rule 41(g), "we now clarify that reading is incorrect." *Id.* at n.4.

As noted above, *Ordonez* then unequivocally held that a damages remedy was not available under Rule 41(g). In doing so, the court recognized that "there are many valid reasons why one should in fairness be able to pursue a claim for money damages against the government when it wrongfully loses, destroys, or otherwise disposes of seized property." *Id.* at 1140. Nonetheless, these fairness concerns cannot defeat the government's sovereign immunity: "even when it results in a wrong without a remedy, the federal courts are without jurisdiction to award money damages against the government under

---

[4] *Martinson* considered a motion under Rule 41(e), but then-Rule 41(e) was renumbered in 2002 to 41(g) without substantive change. *United States v. Hayes*, 385 F.3d 1226, 1229 n. 4 (9th Cir. 2004).  Any references in other cited cases to Rule 41(e) are equally applicable to Rule 41(g).

Rule 41(g) until Congress tells us otherwise." *Ordonez*, 680 F.3d at 1140.

### 3. Ordonez *controls this case*

#### a. *The government has sovereign immunity under* Ordonez

In the November 21, 2020 Order, Judge Bernal analogized this case to *United States v. Marolf,* 173 F.3d 1213 (9th Cir. 1999). In *Marolf*, the government had improperly forfeited the criminal defendant's boat and then sold the boat. However, unlike in *Marolf*, the Government in this case does not possess the property stolen by Bowman or the proceeds of any sale of that property. Furthermore, *Marolf* relied in part on *Martinson*, *supra*, which in light of *Ordonez* is not controlling. *Ordonez*, which post-dates *Marolf* and *Martinson* and explicitly addresses the issue here, controls the outcome. Cannon's claim therefore fares no better than Ordonez's.

There is no exception to the rule that monetary damages are not available under Rule 41(g). *See United States v. Eames*, 524 Fed. Appx. 320 (9th Cir. 2013) (citing *Ordonez* and holding that the district court lacked jurisdiction to order payment of money damages for gold coins lost by the government because sovereign immunity bars an award of

22

money damages against the government on a motion to recover property under Rule 41(g)); *United States v. Droganes*, 728 F.3d 580, 589-90 (6th Cir. 2013) (quoting *Ordonez* and stating that at least nine circuits have held that sovereign immunity bars an award of money damages against the government on a Rule 41(g) motion where the property cannot be returned, and noting that the appropriate method to seek recovery was to file a claim under the Federal Tort Claims Act); *Diaz v. United States*, 517 F.3d 608, 613 (2d Cir. 2008) ("Once seized currency has been disbursed and is no longer available, a claim for its return is analogous to any Rule 41(g) claim for the return of tangible property that is no longer at hand: such claims are jurisdictionally barred by the principle of sovereign immunity."); *Bailey v. United States*, 508 F.3d 736, 740 (5th Cir. 2007) ("If the district court finds that the government no longer possesses the currency Bailey seeks, his motion must be denied because the government cannot return property it does not possess, and the doctrine of sovereign immunity bars the award of monetary damages under Rule 41(g).").

*Diaz*, one of several cases cited above holding that Rule 41(g) does not authorize payment where the government no longer has the

property, more specifically discussed seized currency. Seized currency should be treated like any other seized property where sovereign immunity bars the claimant from seeking compensation if the property is no longer available. *Diaz*, 517 F.3d at 611. Misplaced cash is not exempt from the general rule:

> Fungibility does not furnish a counter-argument; rather it confirms that money seized from Diaz, now that it is disbursed, can no longer be identified or located in the coffers of the government. True, the fungibility of money argues the ease and precision with which compensation can be achieved; but that says nothing about whether sovereign immunity has been waived to allow payment from the Treasury to compensate for any wrongful seizure of this one form of property."

*Id.* at 612.

After seized currency has been disbursed and no longer available, a subsequent claim for that currency's return should be treated similar to any Rule 41(g) claim that is jurisdictionally barred by the principle of sovereign immunity because the tangible property is no longer at hand. *Id.* at 613.

Here, as in *Diaz*, Cannon is asking for seized money that is unavailable for return. The stolen currency is not in the custody of the United States and has not been since Bowman stole it before the

24

currency count was conducted. In fact, *Diaz's* holding is significantly broader than the facts in this matter. While *Diaz* contemplates a situation where money can't be returned solely because it was distributed and credited to a different account controlled by the government, here the currency at issue was stolen by Bowman without the government's knowledge. Rather than seeking the return of the stolen currency, Cannon is truly seeking damages from the government to cover the currency stolen and never returned by Bowman—a request that sovereign immunity precludes.

In sum, the district court had no jurisdiction to award Cannon any damages under Rule 41(g) resulting from Bowman's theft of the currency because such a claim is barred by the sovereign immunity of the United States. Immunity applies no matter how unfair that result might be. *See Hajro,* 811 F.3d at 1099 (citing *United States ex rel. Haight v. Catholic Healthcare W.*, 602 F.3d 949, 953 (9th Cir.2010)). In certain cases, this could lead to a perceived inequitable result, such as in *Ordonez* where the property was inadvertently lost or destroyed by the government. Here, there is no unfairness—as described in more

25

detail below, the district court held that there is no genuine issue of fact that the stolen currency was the proceeds of drug trafficking.

### b. Minor *does not apply*

Cannon does not cite *Ordonez* in his opening brief. He only mentions sovereign immunity in a brief footnote. In this footnote, he cites *United States v. Minor*, 228 F.3d 352, 355 (4th Cir. 2000) and describes that case as holding that "sovereign immunity does not bar a motion for return of seized property because the claimant is seeking 'restitution of the very thing' to which he claims an entitlement, not damages in substitution for a loss." (AOB 24 n.8.) That is not an accurate description of the case.

First, in *Minor* there was a challenge to the adequacy of notice of an administrative forfeiture. The Fourth Circuit did not view the claim as a motion for return of seized property. While Minor's action had "many substantive affinities with a motion for return of property under Rule 41(e)," it was not brought directly under Rule 41. *Id.* at 356 n.3.

Second, the *Minor* court's discussion of sovereign immunity actually supports the government's position. The Fourth Circuit contrasted the administrative-forfeiture issue in *Minor* with the lack of

26

jurisdiction in a Rule 41 action, citing *United States v. Jones,* 225 F.3d 468 (4th Cir. 2000). *Id.* at 355. In *Jones,* the Fourth Circuit agreed that there was no waiver of sovereign immunity in Rule 41 and affirmed the denial of a motion under Rule 41. Like this Court in *Ordonez,* the Fourth Circuit also rejected a reading of *Martinson* that would create any jurisdiction under Rule 41. *Jones,* at 470 n.3.

### c. *Cannon's arguments regarding forfeiture simply are irrelevant to the jurisdiction issue*

Cannon argues that the government must "return" the stolen money because it did not seek forfeiture of this currency. (AOB 24-29.) But for the reasons set forth above[5], the government does not have the stolen money and therefore cannot "return" this currency to Cannon even if it wanted to do so. All of Cannon's forfeiture arguments and authority therefore are not relevant to the circumstances of this case.

Cannon states that *United States v. Wright,* 49 F.4th 1221 (9th Cir. 2022) and *United States v. Marolf,* 173 F.3d 1213 (9th Cir. 1999)

---

[5] Forfeiture also is a non-issue because the government does not need to forfeit drug proceeds to keep them from being "returned" in a Rule 41 proceeding. This issue is explained below in Section IV.B of this brief.

"resolve" this case. (AOB 28.) Indeed, Cannon claims that *Marolf* is "directly on point." (*Id.*) But that is wrong—it is *Ordonez* that controls this case. Neither *Wright* nor *Marolf* address the circumstances present here. As discussed above, *Marolf* predates *Ordonez,* relies in part on *United States v. Martinson,* 809 F.2d at 1368, does not discuss sovereign immunity, and the government had at least the proceeds of the sale of the seized asset.

Cannon's opening argument and reliance on *Wright* also is misplaced. Cannon argues that "the Government has no right to retain the $218,200 seized" from Cannon. (AOB 22.) But the government is not "retaining" that currency—it was stolen by Bowman. For that reason, *Wright*, on which Cannon relies heavily, is inapposite. In *Wright*, there was no suggestion that the government had lost, destroyed, or otherwise didn't have possession of the currency seized from Wright, a convicted armed robber.

Moreover, unlike *Marolf, Wright* was decided after *Ordonez* and cites to it. *Wright,* 49 F.4th at 1226 n.3. But this discussion does not help Cannon. Wright sought return of several rings which the government agents had removed from his fingers, but which the

28

government no longer possessed. As to that property, the court applied

*Ordonez* and held that these items were not subject to a Rule 41(g)

motion because the government did not possess them and sovereign

immunity applied. *Id. Wright* therefore supports the government's

position in this case.

## B. The District Court Properly Granted the Government's Motion for Summary Judgment

### 1. *Standard of review*

A district court's decision to grant a summary adjudication motion

is reviewed de novo. *See, e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986

F.3d 1253, 1259 (9th Cir. 2021). The appellate court's review is

governed by the same standard used by the trial court under Fed. R.

Civ. P. 56(c). *See Suzuki Motor Corp. v. Consumers Union, Inc.*, 330

F.3d 1110, 1131 (9th Cir. 2003).

The standard of review for denying a Rule 41 motion in these

circumstances is not entirely certain. This Court stated in *United States*

*v. Harrell*, 530 F.3d 1051, 1057 (9th Cir. 2008) that the standard is de

novo. In support of this standard, it cites *United States v. Kaczynski*,

416 F.3d 971, 974 (9th Cir. 2005), which in turn cites *Ramsden v.*

*United States*, 2 F.3d 322, 324 (9th Cir. 1993)). In *Ramsden,* this Court

29

stated that it reviews the district court's decision to exercise its equitable jurisdiction under Rule 41(g) for abuse of discretion. *Id. See also United States v. Howell,* 425 F.3d 971, 974 (11th Cir. 2005) (review of the equitable equation of the district court's decision to deny a Rule 41(g) is for abuse of discretion). This Court probably does not need to reach this distinction here because the district court's ruling should be affirmed under any standard of review.

### 2. *Legal standards*

#### a. *Rule 41(g) motion for recovery of property*

Rule 41(g) states that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Where the property in question "is no longer needed for evidentiary purposes, either because trial is complete, [or] the defendant has pleaded guilty … [t]he person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *Martinson*, 809 F.2d at 1369 (internal citations omitted). However, a Rule 41(g) motion may be denied if the person seeking retrieval of the property "is not entitled to lawful

30

possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991). As the district court correctly noted, where, as here, a Rule 41(g) motion is filed when no criminal proceeding is pending, "the motion is treated as a civil complaint seeking equitable relief." (1-ER-7.) (*quoting United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003).)

### b.    Summary judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

31

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49. A party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

32

Cir. 1987). Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the governing substantive law. *Id*. The court must view all evidence and justifiable inferences "in the light most favorable to the nonmoving party." *Id*. at 630–31.

### 3. *Analysis*

#### a. *Cannon has no property right in the stolen currency as it was the proceeds of his drug trafficking*

Cannon puts considerable focus on the argument that currency cannot be "contraband" itself. (AOB 22-24.) But courts have recognized two types of contraband: contraband per se and derivative contraband. Contraband per se is an object that, without more, constitutes as a crime; or in other words, there is no legal purpose to which the object could be put. *United States v. Harrell*, 530 F.3d at 1057. Derivative contraband includes "things that are not ordinarily illegal, like guns, automobiles, ships and currency that become forfeitable because of their relationship with a criminal act." *United States v. 37.29 Pounds of Semi- Precious Stones*, 7 F.3d 480, 485 (6th Cir. 1993); see also *United*

33

*States v. Kaczynski*, 551 F.3d 1120, 1129 (9th Cir. 2009) (describing derivative contraband as "items that may be lawfully possessed but became unlawful due to their use or intended use").

As explained in *Kaczynski*, where the defendant requested return of materials that could be used to make a bomb, the court is entitled to prohibit the possession of items that are not "per se" contraband when they are derivative contraband. *Kaczynski*, 551 F.3d at 1129-1130. The return of items that are innocent in and of themselves can be denied when such items had been utilized or intended to be utilized for illegal purposes. *Id.* at 1129.

This Court in *Kaczynski* also stated that the defendant had offered no innocent explanation to counter the government's showing that he had used or intended to use the materials at issue for criminal activity. *Id.* It cited with approval the holding in *United States v. Dean*, 100 F.3d 19, 20-21 (5th Cir. 1996), in which the government successfully rebutted a defendant's presumptive right to return of property where a convicted robber sought return of $6,000 found in his possession along with $41,000 bearing bank labels, but offered no credible explanation for the presence of the unmarked cash and was unable to distinguish it from

34

the robbery money or otherwise show that he had lawfully possessed it.

*Id.*

In any event, regardless of whether it is given the "contraband" label, Cannon had no property right in the proceeds of his drug trafficking. As the district court noted, 21 U.S.C. § 881(a)(6) provides as follows:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them ... (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... [and] all proceeds traceable to such an exchange ...).

(1-ER-8 at n.7.) *See United States v. Clymore*, 245 F.3d 1195, 1199-1202 (10th Cir. 2001) (citing § 881(a) and describing Mexican pesos and U.S. currency found in airplane used to transport marijuana as "derivative contraband").

*Wright* is not to the contrary. It addressed the proceeds of robberies, not drug trafficking. Moreover, while this Court in *Wright* disagreed with *Clymore's* conclusion that the government may "quiet title" to seized currency that is not forfeited, *Wright* did not order the return of the seized currency. *Wright,* 49 F.4th at 1227-28. It offered no view on the government's disposal options after denying the Rule 41(g)

35

motion based on the government successfully rebutting the presumption that Wright was entitled to lawful possession of the currency. *Id.* at 1226.

### b. *Cannon did not genuinely dispute the source of the cash stolen by Bowman*

Cannon made claims that the stolen currency consisted of "clean" money and identified purported sources for it (AOB 31-36). While these sorts of dubious after-the-fact explanations sometimes could be enough to defendant summary judgment, on this record the district court did not err in its holding that Cannon did not raise a genuine issue of fact by which a jury could conclude the stolen currency was earned through lawful means. (1-ER-8-10.)

Cannon admitted in his plea agreement that the currency he forfeited in the agreement represented the proceeds of narcotics transactions, and was subject to forfeiture. (2-ER-58.) Like the defendant in *Dean,* Cannon has failed to explain how the portion of the currency he forfeited ($366,800) was narcotics proceeds, but the remainder of the currency in the safe (the amount stolen by Bowman) magically was legitimate income. *Dean,* 100 F.3d at 20-21. *See also Wright,* at 1227 (district court did not clearly err in finding that seized

36

cash was the proceeds of robberies when claimant did not meaningfully explain how he magically came into possession of $40,000).

For similar reasons, the Seventh Circuit case *United States v. $100,120,* 730 F.3d 711 (7th Cir. 2013) cited by defendant (AOB 39) easily is distinguishable. In that case the claimant sought the return of *all* the currency that was in a briefcase. *Id.* at 714. While there were many problems with the claimant's affidavit regarding the legitimate source of the money, it was sufficient to raise a genuine issue of material fact because the money purportedly was the lifetime savings of the claimant. The Seventh Circuit did not say that a genuine issue of fact would exist if the claimant had relied on a magical after-the-fact distinction between different amounts of money in the briefcase.

Moreover, Cannon's cursory proffers for legitimate sources of income are not consistent with his own statements. He said in an interview that he placed $600,000 in cash during two trips in May and July 2014. (2-ER-85-87.) While consistent with the drug trafficking in which he was engaged during this time, this conduct is not consistent with his interrogatory responses claiming that the money in the safe came from the sale of vehicles and from gifts years before he purchased

37

the safe. As noted, Cannon is a career offender with multiple felony convictions for drug trafficking. Based on Cannon's plea agreement in which he agreed to voluntarily forfeit all property subject to forfeiture, his admission that the property listed in his Plea Agreement constituted proceeds of his drug trafficking and/or was used or intended to be used to facilitate his drug trafficking, his admissions to the Office of the Inspector General regarding the cash in the safe, and his failure to provide evidence supporting a reasonable inference that the origin of the money in the safe was anything other than proceeds of drug trafficking, the district court was correct in concluding that Cannon did not carry his burden of showing a genuine issue of fact by which a jury could conclude the portion of money stolen by Bowman had been earned through lawful means, while the remaining $366,800 was tainted.

# VI

# CONCLUSION

The district court's order denying Cannon's Rule 41(g) for return of property or, in the alternative for summary judgment, should be affirmed.

DATED: March 10, 2025

Respectfully submitted,

JOSEPH T. MCNALLY
Acting United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

*/s/ Ryan Waters*

RYAN WATERS
Assistant United States Attorney
Asset Forfeiture and Recovery
Section

Attorneys for Defendant-Appellee
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is unaware of any cases related to this appeal.

# CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 7,338 words, excluding the portions exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: March 10, 2025         */s/ Ryan Waters*

RYAN WATERS
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA