No. 24-1317

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LIONEL CANON, AKA CANNON,
*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,
*Defendant-Appellee*.

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA DISTRICT COURT NO. 5:19-CV-2337-FLA*

# GOVERNMENT'S PETITION FOR PANEL REHEARING
**(Decided June 29, 2026—Bybee, Lee, Forrest)**

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant U.S. Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

1100 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
(213) 894-2400
Jonathan.Galatzan@usdoj.gov

Attorneys for Defendant-Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION** **PAGE**

I. INTRODUCTION .................... 1
II. BACKGROUND .................... 2
III. ARGUMENT .................... 6
IV. CONCLUSION .................... 11

# TABLE OF AUTHORITIES

**DESCRIPTION** **PAGE(S)**

## Cases

*Honeycutt v. United States*,
581 U.S. 443 (2017) ........ 8

*Hughey v. United States*,
495 U.S. 411 (1990) ........ 8

*Ordonez v. United States*,
680 F.3d 1135 (9th Cir. 2012) ........ 3, 9

*Paroline v. United States*,
572 U.S. 434 (2014) ........ 8

*Stein v. Kaiser Found. Health Plan, Inc.*,
115 F.4th 1244 (9th Cir. 2024) ........ 6

*United States v. Brock-Davis*,
504 F.3d 991 (9th Cir. 2007) ........ 9

*United States v. Gasparyan*,
No. 25-1934, 2025 WL 3765500 (9th Cir. Dec. 30, 2025) ........ 6, 7, 8

*United States v. Hackett*,
311 F.3d 989 (9th Cir. 2002) ........ 9

*United States v. Nejad*,
933 F.3d 1162 (9th Cir. 2019) ........ 10

## Rules

Fed. R. Crim. P. 41(g) ........ 1

No. 24-1317

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

LIONEL CANON, AKA CANNON,
*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,
*Defendant-Appellee*.

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. 5:19-CV-2337-FLA*

# GOVERNMENT'S PETITION FOR PANEL REHEARING

## I

## INTRODUCTION

In its published opinion, this Court held that sovereign immunity does not bar a claim under Fed. R. Crim. P. 41(g) for the return of money that the government seized, lost, but then recovered. The government does not seek reconsideration of that holding. Instead, the government respectfully requests panel rehearing to correct two minor

errors that could be misinterpreted to undermine and erroneously expand the panel's holding.

## II

## BACKGROUND

**1.** In 2014, federal agents executed a search warrant. Agents seized about $585,000 in currency from a bedroom safe belonging to a drug dealer (Cannon), but one of the agents involved in the search (Bowman) stole about $218,000 of that—so the $218,000 wasn't reflected in the government's records of the search. Accordingly, the government never forfeited from Cannon the $218,000 stolen by Bowman.

The government has prosecuted Bowman and recovered some of the stolen money. Cannon invoked Rule 41(g)'s return-of-property provision (brought as a standalone civil action since the criminal case is closed) to get his money back. The district court granted summary judgment for the government.

**2.** This Court reversed in a divided published opinion, holding that any money the government recovers from Bowman should be returned to Cannon. Op. 4 ("We hold that when the government has

recovered money traceable to the funds it lost, the person from whom it was seized may seek its return under Rule 41(g).”). The panel majority rejected both of the arguments the government had advanced to defend summary judgment: (1) that Cannon couldn’t show the seized money was from legitimate sources, as opposed to drug money; and (2) that sovereign immunity barred a money judgment against the United States.

**a.** Taking sovereign immunity first, the panel majority acknowledged the rule that the government cannot be sued for “monetary damages under Rule 41(g) in compensation for the property the government lost.” Op. 8 (following *Ordonez v. United States*, 680 F.3d 1135 (9th Cir. 2012)). Because Rule 41(g) “provides only for the return of the property to the movant,” it cannot apply (and cannot operate as a waiver of sovereign immunity) “where the property cannot be returned or where the subject property has been lost or destroyed.” Op. 8–9 (cleaned up). But the majority distinguished that from a situation where “the government seizes, loses, but then recovers” money. Op. 9. “The law has long distinguished between the recovery of money damages as compensation for lost property or money and the

recovery of specific property or monies themselves." Op. 9. Cannon could demand "return" of his money, the majority reasoned, *even if* the actual, physical currency seized by the government and stolen by Bowman was long gone: the "fact that Cannon seeks the return of cash does not make his claim one for money damages." Op. 10–11. "Money differs from other property in that its principal value lies in the unit of account; its exchange value, not its intrinsic value." Op. 11.[1]

Accordingly, if the government recovers money from Bowman "traceable to the money taken from Cannon's safe," that is the "same money" seized by the government by Cannon, even if not the "same physical currency" taken out of the safe. Op. 15 & n.9. Sovereign immunity therefore poses no bar to Cannon's claim for any money the government "has recovered or will recover" from Bowman. Op. 16. ("Because the government currently possesses money that it seized but did not declare forfeit from Cannon, sovereign immunity does not bar Cannon's Rule 41(g) claim for its return.").

[1] The majority offered an example: "If I lend you $20, when you pay me back, I do not expect the same $20 bill. As long as you give me $20, the debt is settled. But if I lend you my car, I expect you to return the exact same car, not some car of equal value." Op. 15.

**b.** With respect to the taint issue, the panel majority concluded that the government had not sought forfeiture of the $218,000 Bowman stole (and no longer could due to the statute of limitations), and that the government also could not meet its burden to show that Cannon "did not lawfully possess it" in the first place. Op. 18–19. "The bare fact that Cannon had money in a safe—admittedly, a lot of money—is not proof that the money was obtained from entirely illegitimate and unlawful sources, and Cannon's admission in his plea deal that *some* of the money was drug proceeds is not an admission that *all* of it was." *Id.* at 20. The majority was "unwilling to assume that because some of the cash was ill-gotten, all of it was." Op. 22.

**3.** Judge Lee dissented, contending that once Bowman stole the money from Cannon's safe it was no longer property subject to return under Rule 41(g)'s exception to sovereign immunity. (Op. 25–27.) He also disagreed with the panel majority on the taint issue, concluding that "the government has shown that the $218,200 found in Cannon's safe was likely the fruit of unlawful drug-dealing." (Op. 28 n.3.)

## III

## ARGUMENT

The government does not seek rehearing on either of the two issues decided against it, but it does respectfully request that the panel amend its opinion to correct two errors that could be misinterpreted in future cases. *See Stein v. Kaiser Found. Health Plan, Inc.*, 115 F.4th 1244, 1250 (9th Cir. 2024) (Forrest, J., concurring) (noting critically that this Court "treat[s] dicta as binding").

**1.** The panel's "hold[ing]" is "that when the government has recovered money traceable to the funds it lost, the person from whom it was seized may seek its return under Rule 41(g)." (Op. 4.) But a couple lines could be spun as suggesting that the government has an obligation to "return" money that it does not presently possess. *Contra, e.g.*, *United States v. Gasparyan*, No. 25-1934, 2025 WL 3765500, at *1 (9th Cir. Dec. 30, 2025).

**a.** The panel wrote that "[a]lthough the record is silent on how much additional money Bowman has paid back to date, it is clear that the government has recovered *or will recover* some of the money it lost to Bowman." Op. 16 (emphasis added). The "has recovered" part of

that sentence is appropriate: as the panel noted, the government has "credited [Bowman] $15,767.40 toward his money judgment for proceeds of the offenses that have already been forfeited." (Op. 6 n.2 (internal quotation marks omitted).) And, taken literally, the rest of the sentence is correct, because the use of the disjunctive "or" makes the statement true regardless of whether there is any realistic possibility that more money "will [be] recovered" from Bowman. Nor does the government dispute that, under the panel's holding, any money it *later recovers* from Bowman that is actually traceable to the currency in Cannon's safe must then be paid over to Cannon. But to the extent that there is any suggestion that the United States can be liable to pay money it does not possess, that would violate its sovereign immunity against suits for monetary damages and the premise of Rule 41(g) as a provision for the "return" of property. It would also be contrary to the rest of the panel's opinion.[2]

---

[2] *See, e.g.*, Op. 4 ("The issue in this case is whether the same rule applies to cash that the government seized, lost, but then *recovered* in restitution [sic] proceedings."); *id.* ("We hold that when the government has *recovered* money traceable to the funds it lost, the person from whom it was seized may seek its return under Rule 41(g)."); Op. 9 ("We must now determine how that rule [in *Ordonez*] applies to money that

(continued . . . .)

**b.** There is also a more cut-and-dried error in the panel's opinion. The reference to "restitution proceedings" should be "forfeiture proceedings." (Op. 4.)

Restitution and forfeiture are different in significant ways. "Criminal forfeiture statutes empower the Government to confiscate property derived from or used to facilitate criminal activity." *Honeycutt v. United States*, 581 U.S. 443, 447 (2017); *see also* Op. 16. "Restitution" requires "defendants to pay the victim the full amount of the victim's losses." *Paroline v. United States*, 572 U.S. 434, 443 (2014); *see also* *Hughey v. United States*, 495 U.S. 411, 416 (1990) ("the ordinary

---

the government seizes, loses, but then *recovers*."); Op. 16 ("Because the government *currently possesses* money that it seized but did not declare forfeit from Cannon, sovereign immunity does not bar Cannon's Rule 41(g) claim for its return."); Op. 16 n.10 ("As for any money that Bowman stole and that was not reflected in the criminal forfeiture order, or that is not traceable to Bowman's theft, Cannon cannot seek money damages in its place."); *id.* (agreeing "that the government cannot be asked to return property that it does not possess on a Rule 41(g) motion"); *id.* (noting "caselaw from other circuits holding that if the government never actually seized the cash, or if the cash has already been dispersed and is not recoverable, sovereign immunity prevents a claim for its monetary equivalent"); Op. 17 n.10 ("We are unaware of any circuit that has held that sovereign immunity bars Rule 41(g) claims when the government loses but later *recovers* the property."). (All emphases added.)

meaning of 'restitution' is restoring someone to a position he occupied before a particular event"). Forfeiture is generally tied to property "traceable" to an offense, as in this case. *See* Op. 16 ("What Bowman is remitting to the United States is traceable to the proceeds from Cannon's safe," giving the examples of a Toyota Scion bought with stolen money and cash deposited to a bank account). Restitution is often broader, since it covers not only property traceable to an offense but can include payment for money damages, such as "clean-up or repair costs." *United States v. Brock-Davis*, 504 F.3d 991, 997 (9th Cir. 2007); *see also United States v. Hackett*, 311 F.3d 989, 992 (9th Cir. 2002) ("both physical injury and financial loss are compensable" as restitution).

Allowing Rule 41(g) recovery for property obtained by the government in restitution proceedings would therefore go beyond situations where "the government has *recovered* money traceable to the funds it lost." Indeed, it would subject the government to tort-like liability for money damages. *Brock-Davis*, 504 F.3d at 997; *contra Ordonez v. United States*, 680 F.3d 1135, 1137–38 (9th Cir. 2012). Restitution, however, is not at issue in this case; the relevant

proceedings, as the panel's opinion makes clear, are forfeiture proceedings. Nor is there any issue here about the forfeiture of "substitute property," *United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019), beyond "the amount traceable to the money taken from Cannon's safe." Op. 15.

**2.** Both of these two lines in the panel opinion—suggesting potential present liability for funds not yet recovered, and referring to money recovered in restitution proceedings—go beyond the panel's limited "hold[ing] . . . that when the government has recovered money traceable to the funds it lost, the person from whom it was seized may seek its return under Rule 41(g)." (Op. 4.) Accordingly, the government respectfully requests that the panel amend and correct its opinion as follows:

- On page 4 of the slip opinion, change the word "restitution" to "forfeiture."
- On page 16, delete "or will recover."

## IV

## CONCLUSION

The government respectfully requests that the panel amend its opinion to correct the two errors identified above.

DATED: September 11, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

*s/ Jonathan Galatzan*

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

I certify that:

1. The attached petition for panel rehearing complies with Circuit Rule 40-1(b) because it contains 1,899 words, including zero words manually counted under Cir. R. 32-1(f), and excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. The petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: September 11, 2026 *s/ Jonathan Galatzan*

JONATHAN GALATZAN
Attorney for Defendant-Appellee
UNITED STATES OF AMERICA

# *Cannon v. United States*, No. 24-1317 (9th Cir. June 29, 2026)

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LIONEL CANNON, AKA Cannon,<br>*Plaintiff - Appellant*,<br>v.<br>UNITED STATES OF AMERICA,<br>*Defendant - Appellee*. | No. 24-1317<br>D.C. No. 5:19-cv-02337-FLA-SP<br>OPINION |

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted September 16, 2025
Pasadena, California

Filed June 29, 2026

Before: Jay S. Bybee, Kenneth K. Lee, and Danielle J. Forrest, Circuit Judges. *

Opinion by Judge Bybee;
Dissent by Judge Lee

---

* Judge Sandra S. Ikuta was originally a member of this panel. Following her death on December 7, 2025, Judge Forrest was drawn to replace her. *See* Ninth Cir. Gen. Order 3.2.h. Judge Forrest has read the briefs, reviewed the record, and listened to oral argument.

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (18 of 45)



## SUMMARY[**]

**Fed. R. Crim. P. 41(g) / Motion for Return of Property**

The panel reversed the district court's grant of summary judgment for the federal government in Lionel Cannon's motion under Federal Rule of Criminal Procedure 41(g) seeking the return of his cash seized by the government.

The FBI was investigating Cannon on federal drug trafficking charges. During a lawful search, agents seized $585,000 in cash. FBI Special Agent Scott Bowmann pocketed $218,200. Cannon moved under Rule 41(g) for the return of the $218,000 that Agent Bowman stole and that had never been forfeited.

The panel held that sovereign immunity did not bar Cannon's Rule 41(g) claim. In *Ordonez v. United States*, 680 F.3d 1135 (9th Cir. 2012), the court held that when property seized by the government has been lost or destroyed, "an award of money damages against the government under Rule 41(g) is barred by sovereign immunity." *Id.* at 1140. The panel held that this same rule does not apply to cash that the government seized, lost, but then recovered in restitution proceedings.

The panel held that when the government has recovered money traceable to the funds it lost, the person from whom it was seized may seek its return under Rule 41(g). When its return is sought, the government bears the burden of demonstrating that it has a legitimate reason to retain the

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

money. Cannon provided evidence supporting his claim that lawful funds were intermingled with the drug proceeds subject to forfeiture. The government had the opportunity to dispute this evidence. On this record, the government has not done so. Accordingly, the panel held that summary judgment was in error, and returned the case to the district court for further proceedings.

Judge Lee dissented. He would hold that the government has not waived sovereign immunity for claims for money no longer in the government's possession. There is no evidence in the record that the government has possession of the $218,000 found in Cannon's safe and stolen by Agent Bowman. Because Cannon sought property not in the government's possession, the government cannot return it to Cannon. and Rule 41(g)'s waiver of sovereign immunity does not apply.

---

## COUNSEL

Alexander Botoman (argued), Deputy Federal Public Defender; Cuauhtémoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Plaintiff-Appellant.

Ryan Waters (argued) and Jonathan Galatzan, Assistant United States Attorneys; Lindsey G. Dotson, Assistant United States Attorney, Chief; Criminal Division; Joseph T. McNally, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Defendant-Appellee.

## OPINION

BYBEE, Circuit Judge:

Federal Rule of Criminal Procedure 41(g) provides that a person who has been deprived of his property by the government may move for the property's return. In *Ordonez v. United States*, 680 F.3d 1135 (9th Cir. 2012), we held that when property seized by the government has been lost or destroyed, "an award of money damages against the government under Rule 41(g) is barred by sovereign immunity." *Id.* at 1140. The issue in this case is whether the same rule applies to cash that the government seized, lost, but then recovered in restitution proceedings. We hold that when the government has recovered money traceable to the funds it lost, the person from whom it was seized may seek its return under Rule 41(g). When its return is sought, the government bears the burden of demonstrating that it has a legitimate reason to retain the money. The government did not meet its burden here. We thus reverse the district court's grant of summary judgment for the government.

### I. BACKGROUND

In August 2014, the FBI was investigating Lionel Cannon on federal drug trafficking charges. During a lawful search of his mother's home, agents seized $585,000 in cash from a safe in Cannon's bedroom. The next day, after the cash was in government custody but before it was placed in an official cash-counting facility, FBI Special Agent Scott Bowman pocketed $218,200. As a result, the official inventory listed only $366,800 as seized.

Shortly after the cash was seized from Cannon's safe, the FBI caught wind of Bowman's theft. In April 2015, FBI

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (21 of 45)



agents interviewed Cannon while he was in pretrial custody, and Cannon informed them of the total amount in the safe. With Cannon's help, Bowman was indicted, and in September 2016, Bowman pleaded guilty to conversion of property by an employee or officer of the United States, 18 U.S.C. § 654, and related crimes. Bowman's plea included a money judgment of forfeiture requiring him to pay $136,462 under 18 U.S.C. § 981(a)(1)(C), representing the "proceeds of the offenses to which he has entered a guilty plea." Besides the cash from Cannon's safe, Bowman had converted $10,982 and $4,600 from unrelated searches. Thus, conservatively, $120,880 of the $136,462 judgment represents proceeds from Cannon's safe.[1] It is undisputed

[1] It is unclear from the record what methodology was used to calculate the $136,462 judgment. In his deal, Bowman plead guilty to three separate thefts and agreed with the government "that the total loss amount for purposes of this plea agreement is $136,462.00." The amounts that Bowman stole from the two unrelated thefts—$10,982 and $4,600—were ascertained and verified in his plea, while the amount he converted from Cannon's safe was unverifiable at the time. The plea deal describes the amount stolen from Cannon's safe as a "substantial portion of the currency seized" and notes that "substantially more than $366,800 in cash was removed from the safe." It then describes the various cash expenditures Bowman engaged in in the weeks after that crime, which include purchasing a Toyota Scion FR-S coupe for $27,500, a Dodge Challenger coupe for $43,850, $9,612 in luxury upgrades for the Toyota, $17,000 in luxury upgrades for the Dodge, $2,353 in upgrades for another car, $700 on a trip to Las Vegas, and $15,000 on cosmetic surgery for his spouse, as well as depositing $10,665 into bank accounts. The total of these verified cash expenditures is $126,680. Thus, although the government has now acknowledged that Bowman stole $218,000 from Cannon's safe, the $120,880 figure may have represented how much cash Bowman spent lavishly in the weeks after that crime, less a $7,000 to $8,000 cash gift from his father.

that the government has recovered some of this money and expects to recover more funds through criminal forfeiture.[2]

In April 2017, more than six months after Bowman's guilty plea and forfeiture order, Cannon pleaded guilty to drug-trafficking charges. In his plea deal, he agreed to forfeit "$366,800.00" from the safe, which represented the $585,000 actually seized by the FBI, less the $218,000 purloined by Bowman. In March 2018, the court issued a forfeiture order reflecting that amount. Despite knowing for two years that far more money had been seized from Cannon's safe, the government never initiated forfeiture proceedings for that additional money. The charging documents, including the three amended indictments and the final forfeiture order, listed $366,800 as the amount from the safe subject to forfeiture. When negotiating Cannon's plea, both parties understood that an additional $218,800 had been taken—the government even stated as much on the record at Cannon's sentencing—yet Cannon agreed to forfeit only $366,800.

Shortly after his guilty plea and forfeiture, Cannon moved under Rule 41(g) for the return of the $218,800 that Agent Bowman stole and that had never been forfeited. Because no criminal proceedings were pending, the district court treated the Rule 41(g) motion as a civil complaint and the government's opposition as a motion for summary judgment. The court found that Cannon had agreed to forfeit "property 'including but not limited to . . . $366,800.00 in U.S. currency,'" and that his "admissions support an

[2] At oral argument, counsel for the government confirmed that it is recouping the money. During criminal forfeiture proceedings against Bowman, the government credited him $15,767.40 toward his money judgment "for proceeds of the offenses that have already been forfeited."

inference that he agreed to forfeit *all* property seized from the safe in his mother's house, which the government incorrectly assumed to be $366,800.00 when the indictment was returned, and wrongly stated in the plea agreement." The court found that Cannon's evidence explaining why he was lawfully in possession of some of the cash—wages, sales of vehicles, and gifts—was "self-serving" and insufficient to create a genuine issue of material fact. The court concluded that no jury "could conclude the portion of the money taken by [Agent] Bowman had been earned through lawful means and was 'clean' as a result, while the remaining $366,800 was tainted." The court granted judgment for the government. Cannon filed a timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review de novo whether the government has waived its sovereign immunity. *Halverson v. Burgum*, 148 F.4th 1089, 1093 (9th Cir. 2025). If no criminal proceedings are pending when the movant files a Rule 41(g) motion and the district court treats the motion as a civil complaint subject to the Federal Rules of Civil Procedure, we review de novo a grant of summary judgment on a Rule 41(g) motion. *See United States v. Ibrahim*, 522 F.3d 1003, 1007–08 (9th Cir. 2008); *United States v. Ritchie*, 342 F.3d 903, 906–07 (9th Cir. 2003).

## III. ANALYSIS

There are two issues before us. First, we must address the government's argument that sovereign immunity bars Cannon's Rule 41(g) claim. Although this issue was not presented to the district court, "[w]e will consider the issue of sovereign immunity on the merits because it can be raised at any time by the government, as it goes to a court's

jurisdiction." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) (quoting *IRS v. Fed. Lab. Rels. Auth.,* 521 F.3d 1148, 1152 (9th Cir. 2008)). Concluding that sovereign immunity does not bar Cannon's claim, we then turn to whether the district court properly granted summary judgment on the government's claim that Cannon was not entitled to recover any cash seized by the government.

A. *Rule 41(g) and Sovereign Immunity*

Federal Rule of Criminal Procedure 41(g) provides that "[a] person aggrieved . . . by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). If the district court grants the motion, "the court must return the property to the movant." *Id.*

In *United States v. Martinson*, 809 F.2d 1364 (9th Cir. 1987), we suggested that when the government has lost or destroyed the property in question, a person could seek monetary damages in compensation under Rule 41(g). *Id.* at 1370. We reexamined that suggestion in *Ordonez v. United States*, 680 F.3d 1135 (9th Cir. 2012).[3] Ordonez sought the return of personal items that the government had misplaced due to poor recordkeeping and storage. *Id.* at 1137. Years later, once it was clear that the government "was unable to locate" the missing items, we held that Ordonez could not recover monetary damages under Rule 41(g) in compensation for the property the government lost. *Id.* We framed the holding as applying "where the property cannot

[3] We observed that "*Martinson* did not address directly the issue of sovereign immunity" and was not binding on that point. *Ordonez*, 680 F.3d at 1139 (citing *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984)); *see id.* at n.4 ("To the extent *Martinson* has been read as holding that sovereign immunity does not bar a claim for money damages under Rule 41(g), we now clarify that reading is incorrect.").

be returned" or "where . . . the subject property has been lost or destroyed." *See id.* at 1137–38. This conclusion followed from Rule 41(g)'s language, which we noted "provides only for the 'return [of] the property to the movant.'" *Id.* at 1139 (quoting Fed. R. Crim. P. 41(g)). Because the "clear and unambiguous" text contains "no alternative provision for money damages, . . . such a provision cannot be implied." *Ordonez*, 680 F.3d at 1139 (citation omitted). "[E]ven when it results in a wrong without a remedy," an award of money damages against the government under Rule 41(g) is barred by sovereign immunity. *Id.* at 1140; *see United States v. Wright*, 49 F.4th 1221, 1226 n.3 (9th Cir. 2022) ("Rule 41(g) is not a general waiver of sovereign immunity; it only allows for the recovery of property currently in the government's control.").

We must now determine how that rule applies to money that the government seizes, loses, but then recovers. Because *Ordonez* dealt with a case of lost belongings, there was no serious question that the money the movant sought was not "the property" that was seized, but rather compensation in its place—namely, money damages. The distinction we drew in *Ordonez* between the right to *property* and the right to *compensation for lost property* is not as clear when cash is the property at issue. *Ordonez* did not provide a framework for, or even discuss, how to differentiate between "the property" and "money damages" when the property in question is cash. Fortunately, longstanding precedent and common sense provide guidance on this thorny issue.

The law has long distinguished between the recovery of money damages as compensation for lost property or money and "the recovery of specific property or monies" themselves. *See Larson v. Domestic & Foreign Com. Corp.*,

337 U.S. 682, 687–88 (1949). The difference hinges on whether the remedy seeks return of the thing itself or a substitute for the thing: "Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (quoting *Maryland Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)) (internal quotation marks omitted). Thus, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893; *see United States v. Park Place Assocs.*, 563 F.3d 907, 930 (9th Cir. 2009) (contrasting "specific relief . . . that the plaintiff would be owed *even if the defendant had never engaged in wrongful conduct*" with "*compensatory* relief, or relief that substitutes for that which ought to have been done"); *see also United States v. Minor*, 228 F.3d 352, 355 (4th Cir. 2000) ("Even though [defendant] seeks return of currency, we can see no persuasive reason to treat his motion differently than an action in equity for the return of a tangible item of personal property. In suing for return of the currency, [defendant] seeks restitution of 'the very thing' to which he claims an entitlement, not damages in substitution for a loss." (quoting *Bowen*, 487 U.S. at 895)).

Cannon seeks the return of the very thing to which he is entitled, namely "the property" under Rule 41(g). In this case, that is the cash the government seized but did not pursue in forfeiture proceedings. As in *Bowen*, Cannon's claim is not for money damages; rather, it is "a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." 487 U.S. at 900. The fact that Cannon seeks the return of cash does not make his claim

one for money damages. We have long treated Rule 41(g) motions—even those for return of cash seizures—as motions in equity, not law, and equity is directed to ownership of the property itself, not to compensation, which is a legal remedy. *See United States v. Marolf*, 173 F.3d 1213, 1216 (9th Cir. 1999) ("Rule 41(e) motions are treated as proceedings in equity when there are no criminal proceedings pending against the movant.");[4] *Martinson*, 809 F.2d at 1367.

Despite Cannon's affirmance that he is seeking equitable return of the cash that was seized and not money damages in its place, the government claims he must be seeking money damages because he cannot be seeking the same currency stolen by Agent Bowman. But that the money the United States is recouping from Agent Bowman is not the same "physical currency"—that is, the exact same bills that were taken from Cannon's safe—does not alter the result. Such a hyperformalistic approach misconstrues the nature of money. Money differs from other property in that its principal value lies in the unit of account; its exchange value, not its intrinsic value. *Cf. Wisconsin Ctr. Ltd. v. United States*, 585 U.S. 274, 277–78 (2018); *Juilliard v. Greenman (The Legal Tender Cases)*, 110 U.S. 421, 449 (1884). Put another way, money has no use outside its socially constructed exchange value; its value derives from its ability to be exchanged for property that *does* have inherent use value. This lack of inherent value is money's sine qua non. After all, on a deserted island, a $100 bill might as well be Monopoly money.

This characteristic of money is reflected in 31 U.S.C. § 5103, which makes "coins and currency . . . including

[4] Rule 41(e) was renumbered to Rule 41(g) in 2002. *See* Fed. R. Crim. P. 41, *Adv. Comm. Notes*, 2002 Amendments.

Federal reserve notes . . . legal tender for all debts, public charges, taxes and dues." Paper money is "fiat money"—it has fixed value because the government says that it has value. *See* U.S. Const. art. I, § 8, cl. 5 (granting Congress the power to "coin Money, [and] regulate the Value thereof"). Federal reserve notes have little intrinsic value outside of Congress's declaration that they are legal tender and whatever value the Bureau of Engraving and Printing prints on them.[5] When FBI agents seized the money in Cannon's safe, they knew exactly what its value was. No appraisals or negotiations necessary.

This peculiar quality of money is why our law has long assessed and identified money by its amount, not by the physicality of bills. Tax refunds are never the exact same bills that were withheld; bankruptcy never obligates the debtor to return the same bills she borrowed; cash bail is not refunded with the same currency posted. A person entitled to return of cash seized cannot object on the basis that the cash was in $100 bills and he was given back $20 bills. As the Supreme Court explained, "if the 'property' that was 'damage[d],' 'los[t],' or 'destr[oyed]' was the money, then 'the property . . . returned' must also be the money. Money being fungible, however, '*the property . . . returned' need not be the very same bills or checks.*" *Robers v. United*

[5] The exception that proves the rule is the numismatic value of certain collectible coins and bills. That certain coins have value beyond their face is a product of their historical significance, rarity, or metal content. They thus lack money's fungibility.

*States*, 572 U.S. 639, 643 (2014) (emphasis added; citation modified).[6]

Adopting the government's theory in this case would also be inconsistent with the on-the-ground realities of the way the government itself handles cash proceeds. The United States Marshals Service (USMS) is responsible for managing and safeguarding seized assets. When federal law enforcement seizes cash during a criminal investigation, federal regulations require that the cash be inventoried and then "deposited promptly in the Seized Asset Deposit Fund." 28 C.F.R. §§ 8.4–8.5. The Department of Justice instructs its agents to take the cash to one of the "Treasury's contracted Seized Cash Currency Network (SCCN) vault locations for cash counting services." U.S. Dep't of Just., *Asset Forfeiture Policy Manual* 4-18 n.22 (2025). After the cash is counted at the vault, "the value is remitted

[6] As one commentor has observed:

> The key here is that money, aside from rare coins and bills, is fungible. Allowing the plaintiff to recover money for cash taken by the government is functionally indistinguishable from allowing the plaintiff to recover account funds in a bank account that the government seized. A bank account does not have specific coins and cash in it, but a plaintiff would be able to recover the funds in the account as property under Rule 41(g). In other words, even though the government no longer has the actual coins and bills that were seized, it should be treated nonetheless as having the plaintiff's property—that is, the plaintiff's specific money.

Colleen P. Murphy, *Money as a "Specific" Remedy*, 58 Ala. L. Rev. 119, 149 (2006).

electronically to the USMS." *Id.*[7] This regulation means that the exact bills are never kept by the government. In fact, "[t]he USMS does not accept cash." *Id.* Yet because the money is in the government's bank account, by any measure, the United States *possesses* the seized funds. If the money is forfeited, it is then transferred to the Asset Forfeiture Fund (AFF), where it is distributed to law enforcement agencies, victims, and other relevant parties. *See generally id.* at 12-2, 14-1–15-3. If the money is not forfeited and is returned to the owner, the ordinary method for reimbursing the owner is via EFT. 31 C.F.R. § 208.3. Nothing in the regulations suggests that the USMS should store the cash in locked boxes until it is clear the money does not have to be returned to its owner.[8]

The USMS's process for managing other types of seized property is entirely different: It contracts with property custodians to oversee and dispose of seized assets. *See*

---

[7] There is an exception to the requirement that the value of the seized funds is transmitted electronically. If a supervisory official determines in writing that the currency is "reasonably likely to serve a *significant, independent, tangible evidentiary purpose*," such as by having fingerprints or drug residue, the cash may be kept. 28 C.F.R. § 8.5(b) (emphasis added). The cash at issue here did not hold this special evidentiary value.

[8] The magnitude of having to store "the same money" would overwhelm federal law enforcement and increase the risk of lost or stolen property. In the 2023 fiscal year, $2.96 billion of AFF's $3.18 billion in forfeiture revenue came from cash or cash equivalents. *See* U.S. Dep't of Just., Off. of the Inspector Gen., *Audit of the Assets Forfeiture Fund and Seized Asset Deposit Fund Annual Financial Statements Fiscal Year 2023*, 6 tbl.1, 8 (Jan. 2024). Annually, the USMS processes more than 30,000 payments, typically exceeding $500 million, to asset forfeiture payees. *See* Asset Forfeiture, U.S. Marshals Serv. (last visited Apr. 23, 2026), https://perma.cc/YJV3-KNQT.

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (31 of 45)



*Forfeiture Manual*, *supra*, at 2-10. After all, while it is easy to deposit seized cash into an account, you cannot put a boat into a bank. When the government seizes a boat, the owner is entitled to return of the same boat; but if the government seizes money, the owner is not entitled to, and probably would never ask for, the return of the same bills. Instead, the owner is entitled to the return of money of equal value, which represents the *seized funds* even if it is not composed of the same bills. This aligns with common sense: If I lend you $20, when you pay me back, I do not expect the same $20 bill. As long as you give me $20, the debt is settled. But if I lend you my car, I expect you to return the exact same car, not some car of equal value.

The relevant question then is not whether the bills Agent Bowman is remitting to the government have the same serial numbers as the ones from Cannon's safe, but whether he is remitting the value or amount traceable to the money taken from Cannon's safe.[9] We think it clear that he is. In the government's own words, Bowman's $136,462 money

[9] The dissent acknowledges that the government has waived sovereign immunity as to "the actual money in its possession," and that seized money is returnable when the government possesses the "same money." Dissent Op. at 25. We agree with that premise. But the dissent then errs in thereby concluding that Cannon's property cannot be returned because the money the government is recouping from Agent Bowman may not be the "same physical currency" stolen from Cannon's safe. Dissent Op. at 27. As discussed above, requiring that money be the same physical currency to be the "same money" ignores the essential fungibility of money. Money remains the same money even if it changes form, such as when it is deposited into a bank, transferred electronically, or recovered after being lost or stolen. Under the dissent's approach, the government could hide behind sovereign immunity to avoid its Rule 41(g) obligation to return seized currency by claiming it no longer has the money—"the same bills"—that is, once it is deposited into a bank account or transferred electronically.

judgment represented the "proceeds of the offenses to which he has entered a guilty plea." The federal forfeiture statute provides that the property subject to forfeiture is that "which constitutes or is derived from proceeds traceable to a violation [of certain predicate offenses]." 18 U.S.C. § 981(a)(1)(C). Thus, even if not the exact bills Bowman stole, the money judgment represents precisely the property Bowman stole.

What Bowman is remitting to the United States is traceable to the proceeds from Cannon's safe. The day after Bowman stole the money from the safe, he bought a 2013 Toyota Scion FR-S coupe for $27,500 in cash. In the ensuing days, he also made cash deposits of over $10,000 into a bank account. In his plea, Bowman agreed to hand over the 2013 Toyota Scion and a bank account with $4,438.79 for liquidation, acknowledging a "nexus" between this property and the crimes and that it "constitutes proceeds of his crimes." The court credited him $15,767.40 toward his money judgment based on the sale of the Toyota "for these proceeds of the offenses." Although the record is silent on how much additional money Bowman has paid back to date, it is clear that the government has recovered or will recover some of the money it lost to Bowman. Because the government currently possesses money that it seized but did not declare forfeit from Cannon, sovereign immunity does not bar Cannon's Rule 41(g) claim for its return.[10] On

[10] As for any money that Bowman stole and that was not reflected in the criminal forfeiture order, or that is not traceable to Bowman's theft, Cannon cannot seek money damages in its place. This comports with our holding in *Ordonez* that the government cannot be asked to return property that it does not possess on a Rule 41(g) motion. 680 F.3d at 1137–38. It also comports with caselaw from other circuits holding that if the government never actually seized the cash, or if the cash has

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (33 of 45)



remand, the government bears the burden to prove how much it has obtained from Bowman. *See Wright*, 49 F.4th at 1225; *Bailey v. United States*, 508 F.3d 736, 739 (5th Cir. 2007).

Because sovereign immunity does not bar Cannon's claim for the money the United States has or will recoup from Agent Bowman, we now proceed to the merits of the district court's grant of summary judgment.

B. *Cannon's Claim to the Remaining Funds*

Once criminal proceedings end and the seized property is no longer needed as evidence, "[t]he person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *Martinson*, 809 F.2d at 1369 (footnote omitted). We have recognized three ways the government can rebut a defendant's presumptive entitlement to return of the property and demonstrate a legitimate reason to retain the property. *Wright*, 49 F.4th at 1226. First, it may establish that the property is contraband. *Id.* Second, it may establish that the property is subject to forfeiture. *Id.* Finally, it can show that the defendant is not entitled to lawful possession of the

already been dispersed and is not recoverable, sovereign immunity prevents a claim for its monetary equivalent. *See Diaz v. United States*, 517 F.3d 608 (2d Cir. 2008); *Bailey v. United States*, 508 F.3d 736 (5th Cir. 2007); *Clymore v. United States*, 415 F.3d 1113 (10th Cir. 2005); *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003) (opinion of Posner, J.). We disagree with the dissent that our holding is incompatible with these cases. Dissent Op. at 26. We are unaware of any circuit that has held that sovereign immunity bars Rule 41(g) claims when the government loses but later recovers the property, or when the government cannot return the exact bills seized because the money has changed forms, such as by being deposited into a bank account.

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (34 of 45)



property. *Id.* To that end, district courts "must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g).

First, the district court erred in finding that the money was contraband. The court relied on *United States v. Kaczynski*, 551 F.3d 1120 (9th Cir. 2009), which described derivative contraband as "items that may be lawfully possessed but became unlawful due to their use or intended use." *Id.* at 1129. But in our later decision in *Wright*, we considered the definition of contraband in *Kaczynski* and clarified that currency is not contraband of any kind: "Heroin and bomb-making materials are contraband; *currency is not*." *Wright*, 49 F.4th at 1226 n.2 (emphasis added) (citing *Bennis v. Michigan*, 516 U.S. 442, 459–62 (1996) (Stevens, J., dissenting)). The district court did not discuss *Wright* or explain why it reached a different conclusion. The government has not rebutted Cannon's presumptive right to have the seized property returned by showing it is contraband.

Second, the additional $218,000 seized from the safe is not subject to forfeiture. At oral argument, the government conceded that it had not brought timely forfeiture proceedings for the missing cash and that no forfeiture proceedings could be brought because of the statute of limitations. *See* 19 U.S.C. § 1621. The government cannot use Rule 41(g) to circumvent the statutory protections of forfeiture proceedings. "Congress has enacted a detailed statutory forfeiture scheme through which the government may establish title in seized property." *Wright*, 49 F.4th at 1224. "Allowing the government to circumvent this congressional scheme through a Rule 41(g) proceeding would necessarily allow the government to side-step many of these protections." *Id.*; *see also Marolf*, 173 F.3d at 1216–

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (35 of 45)



17 (holding that the government may not use a Rule 41(g) proceeding to elude the statute of limitations governing forfeiture actions); *United States v. One 1985 Mercedes-Benz, 300 SD, VIN WDBCB20C6FA177831*, 14 F.3d 465, 468 (9th Cir. 1994) ("Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law.") (quoting *United States v. One 1936 Model Ford V–8 De Luxe Coach,* 307 U.S. 219, 226 (1939)). Property used to facilitate a crime may be returned to a Rule 41(g) claimant if the forfeiture statute of limitations has expired. *Marolf*, 173 F.3d at 1215.

Third, even if the government has failed to establish its title in the property through forfeiture, the government may show that Cannon is not entitled to lawful possession of the property. But we must begin with a presumption that Cannon is in lawful possession of the property taken from him; it is the government's burden to show that he did not lawfully possess it. *See United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014); *United States v. Van Cauwenberghe*, 827 F.2d 424, 433–34 (9th Cir. 1987) (finding defendant's Rule 41(g) (then 41(e)) motion failed because defendant could "no longer demonstrate that he is entitled to lawful possession of the property" because he admitted "that he irrevocably transferred full title to the property to" third parties); *United States v. Palmer*, 565 F.2d 1063, 1065 (9th Cir. 1977) (finding that the government can overcome the presumption by demonstrating a "cognizable claim of ownership or right to possession adverse to that of" the defendant).

The government has not satisfied its burden. In November 2020, the district court ordered the parties to provide evidence and briefing on whether the cash stolen from Cannon was "contraband or subject to forfeiture." In

discovery responses and a sworn declaration, Cannon listed specific, lawful sources of the cash, including money from car sales, monetary gifts, tax returns, and two years of employment income as a personal trainer. The government could have disputed this provenance by verifying Cannon's employment, producing his tax returns, or obtaining information on the car sales.[11] Instead, the government relied on Cannon's 2015 FBI interview, in which he told officers investigating Bowman that the safe held $585,000 in cash when it was seized. Cannon recalled that he used a money counter to place $200,000 and $400,000 in the safe and later withdrew $15,000. Nowhere in the interview memorandum does Cannon admit that the money was drug proceeds or that he was otherwise not entitled to the money. The government's claim to the contrary is simply an inference from silence. The bare fact that Cannon had money in a safe—admittedly, a lot of money—is not proof that the money was obtained from entirely illegitimate and unlawful sources, and Cannon's admission in his plea deal that *some* of the money was drug proceeds is not an admission that *all* of it was.[12]

*Wright* is illustrative of the kind of proof the government must produce. 49 F.4th 1221. There, the government

[11] Some evidence in the FBI's own records confirmed that Cannon was employed as he claimed.

[12] The district court thought that Cannon agreed to forfeit all of the cash seized from the safe and that the government "incorrectly assumed" the amount was $366,800 and "wrongly stated" so in the plea agreement. The $366,800 was not a scrivener's error, but a negotiated term. Both sides understood that that amount Cannon agreed to forfeit was not the total amount seized from the safe. If the government thinks it made a mistake in the plea agreement, it is up to the government to seek its correction. It is not our place to renegotiate the plea agreement.

successfully rebutted the presumption that the defendant was entitled to lawful possession of the seized cash by "considerable evidence demonstrating that the money was stolen." *Id.* at 1224. The government's evidence included proof that defendant was unemployed during the relevant period; that the cash seized bore "distinctive gold money bands used by the Silverton Casino" wrapped around the cash; that the defendant was in the area of the robberies when they were committed; and that defendant had taken "efforts to conceal" the cash, provided "vague testimony regarding [its] origins," and offered no explanation how defendant "magically came into possession" of it. *Id.* at 1226–27. Here, the government has not attempted to offer comparable proof that Cannon lacked lawful possession of the cash. *Cf. United States v. Dean*, 100 F.3d 19, 20–21 (5th Cir. 1996) (per curiam) (government successfully rebutted presumption of entitlement by showing the proceeds had the name of the bank the defendant robbed on them, and the defendant offered nothing to demonstrate the cash was from something other than the robbery).

The district court stated that Cannon's plea deal to forfeit $366,800.00 from the safe "support[s] an inference that he agreed to forfeit all property seized from the safe in his mother's house." But this inference impermissibly shifts the burden of proof and misstates the parties' bargaining position. During the plea negotiations, both Cannon and the United States understood that the government had seized far more than $366,800 from his safe that day. The $366,800 figure on the forfeiture order was no clerical error—it was the amount the parties had negotiated.

The district court's inference also mischaracterizes the record: At no time did Cannon admit that the entire sum of cash in his safe constituted drug proceeds. The plea

agreement stated that "the above-described property constitutes proceeds of the offense of drug trafficking and/or was property used or intended to be used to facilitate the commission of that offense." What was described above was only—and exactly—"$366,800.00 in U.S. currency" from the safe. The government has no right to keep any lawfully earned money from Cannon's safe, even if it was stored with tainted money. *See Gladding*, 775 F.3d at 1153 (holding that the government had no right to keep noncontraband files intermingled with contraband files on seized devices, and because "[t]he government failed to submit any evidence," it "could not have carried its burden of proof"). We are unwilling to assume that because some of the cash was ill-gotten, all of it was.

The government—not Cannon—bears the burden of demonstrating a legitimate basis for refusing to return the money; if it cannot, it must return Cannon's property. *Wright*, 49 F.4th at 1225. Thus, the government bore the burden of showing that the entire amount seized was unlawful proceeds. Cannon provided evidence supporting his claim that lawful funds were intermingled with the drug proceeds subject to forfeiture. The government had the opportunity to dispute this. On this record, it has not done so, and summary judgment was in error. We return the case to the district court for additional proceedings.

## IV. CONCLUSION

We reverse the judgment and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (39 of 45)



LEE, Circuit Judge, dissenting:

Lionel Cannon—a drug dealer who lived with his mother—kept $585,000 in cash in a safe in his bedroom. Federal agents discovered that cache of money during a lawful search of his mother's house, but FBI agent Scott Bowman secretly took $218,200 and reported finding only $366,800. Agent Bowman spent most of the stolen money on cars, a Vegas trip, and plastic surgery for his wife. He later pleaded guilty. Meanwhile, Cannon also pleaded guilty to drug trafficking and agreed to forfeit "all property subject to forfeiture . . . including but not limited to . . . $366,8000."

Cannon later sued the United States to demand the "return" of the $218,200 stolen by Agent Bowman, invoking Rule 41(g) of the Federal Rules of Criminal Procedure. But sovereign immunity generally shields the federal government from lawsuits unless it agrees to waive it. Rule 41(g) waives immunity only to allow the "return" of unlawfully seized "property." The property here, however, cannot be returned because the money has already been spent. So Cannon is essentially seeking money damages from the United States—even though Rule 41(g) does not waive immunity to allow it.

The majority assumes that because money is fungible, Cannon is seeking a "return" of his "property" when he demands the government give him $218,200. But the fact that money may be fungible does not mean it is the same property. His "property" of $218,200 in his safe is gone: The government no longer has it and cannot return it under Rule 41(g). I respectfully dissent.

* * * *

Rule 41(g) of the Federal Rule of Criminal Procedure provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). If the district court grants the motion, "the court must return the property to the movant." *Id.*

Because a Rule 41(g) motion "is necessarily directed against the United States," we lack jurisdiction unless the government has waived its sovereign immunity. *Ordonez v. United States*, 680 F.3d 1135, 1138 (9th Cir. 2012). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Id.* (*quoting United States v. Mitchell*, 463 U.S. 206, 212 (1983).

The government has waived its sovereign immunity only if the waiver is "unequivocally expressed in statutory text" and "extend[s] unambiguously" to the monetary claim at issue. *Id.* (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). "We apply traditional tools of statutory construction to determine whether the scope of Congress' waiver is 'clearly discernable from the statutory text.'" *Id.* (quoting *FAA v. Cooper*, 566 U.S. 284, 291 (2012)). If the scope of a waiver is ambiguous, we interpret the ambiguity "in favor of the sovereign." *Id.* (quoting *Cooper*, 566 U.S. at 291).

We have interpreted Rule 41(g) as barring a claim for money damages against the government "where the property cannot be returned." *Id.* In *Ordonez*, the government seized the defendant's various personal property during an arrest. *Id.* at 1137. Some items were returned, but the government could not locate other items. *Id.* The defendant sued, seeking money damages for the lost items. *Id*. We affirmed

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (41 of 45)



the district court's dismissal because we could not "find an unequivocally expressed waiver of the government's sovereign immunity that extends unambiguously to money damages in the text of Rule 41(g)." *Id.* at 1139. Although we recognized that this interpretation could "work an injustice to someone losing valuable goods . . . these equitable considerations—standing alone—cannot waive the government's immunity from suit." *Id.* at 1140. "[B]ecause Rule 41(g) contains no express and unequivocal waiver of the government's sovereign immunity, money damages are not a permitted form of relief." *Id.*

Seized money no longer in the government's possession should not be treated differently than the lost items of property discussed in *Ordonez*. Rule 41(g) provides an express waiver of sovereign immunity only for the "return" of property. *See* Fed. R. Crim. P. 41(g). Like any other item of physical property, money can be seized by the government, and that same money can be returned if still in the government's possession. By the same token, if that money has been lost, stolen or disbursed, the government cannot return it. As the Second Circuit has explained, while money is fungible, "that says nothing about whether sovereign immunity has been waived to allow payment from the Treasury to compensate for any wrongful seizure of this one form of property." *Diaz v. United States*, 517 F.3d 608, 612 (2d Cir. 2008). In short, money is like other physical property, and Rule 41(g) waives the government's sovereign immunity only as to the actual money in its possession.

Indeed, "[o]nce seized currency has been disbursed and is no longer available, a claim for its return is analogous to any Rule 41(g) claim for the return of tangible property that is no longer at hand: such claims are jurisdictionally barred by the principle of sovereign immunity." *Id.* at 613. Rule

Case: 24-1317, 09/11/2026, DktEntry: 53.1, (42 of 45)



41(g) does not unequivocally express the government's willingness to be sued for replacement funds. So if no clear waiver of sovereign immunity exists under Rule 41(g) for property generally, then no waiver exists for currency either. *Id.* at 612 ("[S]eized currency should be treated like any other seized property: if the property is no longer available, sovereign immunity bars the claimant from seeking compensation.").

Contrary to the majority, I would join the Second, Fifth, Seventh, and Tenth Circuits, which have held that the government has not waived sovereign immunity for claims for money no longer in the government's possession. *See id.* at 609; *Bailey v. United States*, 508 F.3d 736, 740 (5th Cir. 2007); *Clymore v. United States*, 415 F.3d 1113, 1120 (10th Cir. 2005); *Okoro v. Callaghan*, 324 F.3d 488, 491 (7th Cir. 2003).[1]

To support its claim that the government can effectively "return" Cannon's money, the majority argues that the money Agent Bowman is repaying to the United States can be traced to the proceeds from Cannon's safe. But there is no genuine issue of material fact—indeed there is no evidence in the record—that the government has possession

[1] The majority cites the Fourth Circuit's decision in *United States v. Minor*, 228 F.3d 352 (4th Cir. 2000) in contending that Cannon is not seeking monetary damages. But *Minor* considered whether the court was deprived of jurisdiction under the Tucker Act, not whether the government had waived sovereign immunity under Rule 41(g). *See id*. at 355. In concluding that the Tucker Act did not deprive the court of jurisdiction, *Minor* held that a claimant's challenge to the administrative forfeiture was an action in equity, not law, because the claimant was seeking restitution, not money damages. *See id.* This conclusion does not provide guidance on whether the government waives sovereign immunity under Rule 41(g) when the property seized is currency and cannot be returned.

of the $218,200 found in Cannon's safe and stolen by Agent Bowman. Rather, the record indicates that Agent Bowman disbursed the funds he stole through purchases and deposits. And although Agent Bowman agreed to forfeit $136,462 to the government under his plea agreement, there is no evidence that this forfeiture included the same physical currency he stole from Cannon's safe.

The majority also argues that an exception to Rule 41(g) should exist when the government somehow recoups the "value" of the lost currency, here via Agent Bowman's plea agreement. I disagree. To start, no such exception exists in Rule 41(g)'s text or precedent, and we cannot create one when Congress has not. As the Supreme Court has long held, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (citation modified).[2] A contrary rule would expose the government to countless other suits claiming that the government obtained some "value" purportedly traceable to the seizure of property—even though the government has not consented to suit for claims seeking the "value" of seized property, but has only consented to suit for claims seeking return of the property itself. *See Okoro v. Callaghan*, 324 F.3d 488, 490–491 (7th Cir. 2003) (while usually a "plaintiff is entitled to [] proceeds in an action for restitution," such a suit under Rule 41(g) "is subject to the defense of sovereign immunity when relief would require disbursement of money from the treasury").

[2] The majority's reliance on the discussion of the fungibility of money in *Robers v. United States*, 572 U.S. 639, 640 (2014), is inapposite because that case involved an action against a private individual, not the government.

This case demonstrates how problematic it would be to subject the government to suit under the majority's theory. As the majority acknowledges, "[i]t is unclear from the record what methodology was used to calculate" the $136,462 money judgment against Agent Bowman. While the money judgment represents the "proceeds of the offenses to which [Agent Bowman] entered a guilty plea," the theft from Cannon's safe is not the only offense to which Agent Bowman pleaded guilty. Indeed, the plea agreement resolved all the government's charges against Agent Bowman, not just those related to Cannon's safe. The majority assumes that "$120,880 of the $136,462 judgment represents the proceeds from Cannon's safe," but that division appears nowhere in the record. Thus, far from simply ordering the government to facilitate the return of property, Fed. R. Crim. P. 41(g), the majority would subject the government to complicated actions that involve fact-intensive remedial disputes. Rule 41(g) contains no waiver of sovereign immunity for such involved claims.[3]

[3] And even if we addressed the merits of Cannon's claim, his lawsuit would fail because the government has shown that the $218,200 found in Cannon's safe was likely the fruit of unlawful drug-dealing. *See United States v. Wright*, 49 F.4th 1221, 1226 (9th Cir. 2022) ("[T]he government may rebut the presumption that the defendant is entitled to lawful possession of the property."). The government's evidence shows that Cannon was actively engaged in a drug dealing venture that involved trafficking cocaine and heroin in the summer of 2014, the same period in which the money was seized. Cannon did not present enough evidence to establish a genuine issue of material fact as to his lawful possession of the $218,200. For example, Cannon claimed that he earned $158,600 (presumably post-tax) through his work as a personal trainer during this time period, even though that job paid him only $16 per hour at FITWORKS.

* * * *

Rule 41(g) provides a limited waiver of sovereign immunity: While it may waive sovereign immunity for actions seeking property that the government holds and can return, it does not waive sovereign immunity for actions seeking property that the government does not hold and cannot return. Because Cannon seeks property not in the government's possession, the government cannot return it to Cannon and Rule 41(g)'s waiver of sovereign immunity does not apply. I respectfully dissent.